Nos. 46025, 46026.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FRITZ AUTMAN, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID PULLEY, Appellant.

*Opinion filed September 27, 1974.*

John L. Barton, of Marseilles, appointed by the court, for appellants.

William J. Scott, Attorney General, of Springfield (John Patrick Healy, Assistant Attorney General, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

In separate trials in the circuit court of Will County, Fritz Autman was convicted of armed robbery and David Pulley was convicted of attempted murder. The Pulley jury was unable to reach a verdict on a count charging him with armed robbery. Pulley was sentenced to from 7 to 15 years' imprisonment, and Autman was sentenced to from 2 to 20 years. Both convictions were affirmed by the appellate court (*People v. Pulley*, 11 Ill. App. 3d 292; *People v. Autman*, 11 Ill. App. 3d 300), and this court granted leave to appeal in both cases. The cases have been consolidated here, as both petitioners raise similar legal issues.

These cases involve the armed robbery of a Joliet clothing store on December 19, 1970. Two men were involved in the robbery. One man, who was wearing a gray cap, was armed with a sawed-off shotgun. The other man, who was wearing a black leather jacket and a wool ski cap, was armed with a pistol. The store owner, Milton Lewis, testified that the men entered the store at around 5:50 p.m. The man with the shotgun went to the rear of the store where the cash register was located. The other man went to another area of the store and guarded one of the store employees. Lewis activated a burglar alarm connected directly to police headquarters when he saw the shotgun. The man armed with the shotgun took between $200 and $400 from the cash register and left the store by a rear door. The second robber left by the rear door about one minute later. The police arrived just as the second robber was leaving the store, and, after a chase and a gunfight in which the suspect and a policeman were wounded, the man, David Pulley, was apprehended.

The man with the shotgun was not apprehended. However, some 45 minutes after the robbery had occurred, Lewis remembered that the man was Fritz Autman. Autman had been in his store on prior occasions. Lewis remembered that on those occasions he had been wearing an unusual type of "big apple" cap, identical to the one

worn by the man armed with the shotgun. He also remembered that Autman's physical build, voice and gait were similar to the robber's. After telling the police that Autman was one of the robbers, Lewis was taken to the police station where he was shown a number of photographs, including a picture of Autman. Lewis was unable to pick out Autman's picture and, in fact, picked out pictures of two entirely different men.

Fritz Autman was arrested on December 20, 1970, the day after the robbery, when he voluntarily appeared at the police station. At that time a key was found in his possession which was later discovered to fit the ignition of an automobile found abandoned near the scene of the crime and in which a sawed-off shotgun was found. Autman agreed to make a taped statement to the police, and in that statement denied any participation in the robbery. However, Officer Chizmark testified that after the taped statement was taken Autman remarked, "If I ever pull another job I won't take anybody with me, it doesn't pay."

Autman did not take the stand during his trial. Defendant Pulley did testify during his trial. He stated that at about 5:30 on the night of the robbery he parked his car in front of a liquor store about two blocks south of the Lewis store and left the motor running. When he came out of the liquor store he saw his car being driven away by another man. He chased the car briefly and then noticed that he was being pursued by police. Because he was carrying a pistol he attempted to elude them. At some point he was shot by a police officer and returned one shot before being subdued. He stated that he did not intend to injure the officer, and only wanted to get away.

A number of police officers testified at these trials. Officer Stahl, who along with Officer Stone responded to the burglar alarm, testified that as he approached the Lewis store he saw a man whom he recognized as Fritz Autman standing several feet inside the door. As he

entered the store, Autman left through the front door. Stone testified that Autman was not carrying a weapon and did not appear suspicious. Officer Stone also testified that as he and Officer Stahl entered the store a man was leaving through the same door, but he could not identify that man. The officers stated that when they entered the store a man who had been standing at the counter exited through the rear door. They gave chase and apprehended him several blocks away after an exchange of gunfire.

Officer Farmer testified that while driving to the Lewis store he passed a white Chevrolet going in the opposite direction being driven by Fritz Autman, whom he knew from a prior encounter. Something about the car aroused his suspicion and he turned around to follow it. A short distance away he found the car standing in the street with the motor running and the driver's door open. In the front seat of the car he found a sawed-off shotgun which was identified by Lewis as similar to the gun used in the robbery.

Both defendants claim that their convictions must be reversed because the trial judge in both trials refused the jury's request to have testimony read to them during deliberations. Autman also contends that the evidence did not prove him guilty beyond a reasonable doubt. Pulley further contends that the trial court erred in instructing the jury and that he was denied effective assistance of counsel. We shall first consider the defendants' contentions that the trial judge erred in refusing to reread testimony to the jury.

In the Autman trial the following written communication was sent to the judge by the jury:

"Judge Orenic:

The jury would like to know the owner of the Chevy in People's Exhibit No. 12, License No. 523-040.

/s/ Christine Ohlhuis"

The judge answered:

"You must decide the case on the evidence submitted to

you. The proofs are closed and I cannot answer your question.

/s/ Judge Michael A. Orenic
8:50 p.m."

Later another written note was sent to the judge by the jury:

"Judge Orenic:

Would it be possible to get a transcript of Mr. Lewis' testimony, and also the testimony of the first two officers that entered the front door of the store.

/s/ Christine Ohlhuis Forelady"

The judge replied:

"No.

/s/ Judge Orenic
10:00 p.m."

During the Pulley trial the following message passed between the jury and the judge:

"Would it be possible to have the Court Recorder read back some of the testimony?

/s/ Stanley Angus, Jr."

The judge answered:

"No. It is not permissible to read or play back testimony.

/s/ Judge Orenic
8:30 p.m."

In *People v. Pierce,* 56 Ill.2d 361, we held that it is within the trial court's discretion to allow or refuse a jury's request for a review of testimony. And we later held in *People v. Queen,* 56 Ill.2d 560, that "There is error when a trial court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented." (56 Ill.2d at 565.) We do not think the trial court erred in refusing the request of the Autman jury in the first communication for evidence concerning the ownership of the automobile. Since this evidence was not presented during the trial the court had no choice but to deny the request. However, we are persuaded that in both cases there was error in the court's response to the jury's

request to have testimony reviewed. As in *Queen,* the court's response to these inquiries discloses the court's belief that it did not have discretion to consider the request. Moreover, we are unable to conclude that the error in either case was harmless. In the Autman trial the testimony of Lewis concerning Autman's actions was in direct conflict with the testimony of officers Stahl and Stone. Although we cannot know why the jury wished to hear this testimony a second time, considering its significance, prejudicial error occurred when the court refused to consider the jury's request. In the Pulley trial the jury did not specify what testimony it wished to hear again. Since the request may have related to critical testimony, in that case too the defendant was entitled to have the request considered by the trial court. Thus, the convictions in both cases must be reversed and the causes remanded for new trials.

Having already held that defendant Pulley is entitled to a new trial we need not consider his remaining arguments. However, it is proper for us to consider Autman's contention that the evidence was insufficient to prove him guilty beyond a reasonable doubt. We reject that contention. It is true that there is a conflict between the testimony of Lewis that he saw Autman leave the store through the back door and the testimony of Officer Stahl that he saw Autman leaving through the front door of the store. However, Lewis also stated that the back door was not locked and Autman might have re-entered the store and exited through the front door. Considering the testimony of Officer Farmer that he saw Autman driving away from the store in a car in which a shotgun was found which was identified by Lewis as similar to the gun used in the robbery, the fact that when arrested Autman possessed a key fitting the ignition of this car, and his incriminating in-custody statement, we cannot say that the jury would have acted unreasonably in accepting this explanation of the conflict in the testimony. Consequently, the evidence

here was sufficient to sustain the conviction.

For these reasons the convictions of both defendants are reversed, and the causes are remanded for new trials.

*Reversed and remanded.*