THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT HOUSBY, Defendant-Appellant.

Third District   No. 78-203

Opinion filed March 28, 1980.

STOUDER, P. J., dissenting.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Hinterlong, State's Attorney, of Ottawa (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial, defendant Robert Housby was convicted of theft of property having a value greater than $150 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1)) and burglary and was sentenced to a term of imprisonment of 7 years.

The evidence at trial established that Wilbur Heister left his home near Tonica, Illinois, at about 7 p.m. on May 20, 1977. When he returned around 10:30 p.m., he discovered that his home had been ransacked. Several items were missing from the house and garage, including a John Deere riding lawn mower, a vacuum cleaner, and a digital clock radio. On the same day police had the home of Clifford Evelhoch in Spring Valley, Illinois, under surveillance. At 10:15 p.m. defendant and Raymond King arrived at the Evelhoch residence in King's pickup truck. King removed the vacuum cleaner from the back of the truck and carried it into the home, while defendant did the same with the clock radio.

Clifford Evelhoch, testifying for the State, said that after defendant and King arrived, King asked for help moving a lawnmower. Evelhoch and Douglas Eubanks, who had been at Evelhoch's, agreed to help. King, defendant, Evelhoch, and Eubanks went to defendant's house in Peru, Illinois, in King's pickup truck. After they arrived, defendant got into a panel truck and followed the pickup truck in which the other three were driving to a spot on the side of a gravel road where the John Deere riding mower had been placed. The four men loaded the lawnmower into the panel truck. Defendant in the panel truck and the other three men in King's pickup truck then drove to the farm of Leroy Koch, near Ottawa, Illinois. At the Koch farm three of the men unloaded the lawnmower, and Koch gave King a check. The four men then left the farm with defendant and Evelhoch riding in the panel truck, and King and Eubanks in the pickup.

Koch, testifying for the State under a grant of immunity, said that he had asked Jim Wasilewski, who operated the Green Front Tavern in Peru, Illinois, to get him a lawnmower at a good price. Before the lawnmower was taken to Koch's farm Wasilewski told Koch by telephone that he had procured the lawnmower, and that it would cost $500. Koch said he gave King a check drawn in favor of the Green Front Tavern in payment for the mower. After delivering the lawnmower, King and Eubanks went to the Green Front Tavern where the check was later recovered.

Defendant testified that he was at his home with his wife and brother-in-law from 6 p.m. to 10 p.m. on the evening in question. According to

defendant, King arrived about 10 p.m. and asked for help moving a lawnmower which he had purchased from Bob Lewis, and for which King had a receipt. King and defendant then went to Evelhoch's residence to get more help. Defendant's wife and brother-in-law testified, corroborating defendant's story. The receipt was admitted into evidence.

Over objection by the defense, the court gave the jury Illinois Pattern Jury Instructions, Criminal, (1968) No. 13.21 (hereinafter IPI), as follows: "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by burglary."

Defendant was found guilty of burglary and theft. At his sentencing hearing the prosecutor described the possible sentences defendant could receive for a burglary conviction under the sentencing law in effect before February 1, 1978, and the law in effect on that date. Defendant elected to be sentenced under the "new" law, and the trial court imposed a sentence of 7 years' imprisonment for "burglary and theft."

Defendant's first contention on appeal is that the giving of IPI Criminal No. 13.21 violated his right to due process of law in that it relieved the State of the burden of proving every element of burglary beyond a reasonable doubt by shifting to the defense the burden of persuasion. He also contends that the instruction failed to meet the requirements established by the United States Supreme Court for evidentiary presumptions in criminal cases.

This court recently considered a similar challenge to IPI Criminal No. 13.21 in the appeal of Raymond King, defendant's companion on the evening of May 20, 1977. (*People v. King* (1979), 78 Ill. App. 3d 879, 397 N.E.2d 905.) After extensively reviewing United States Supreme Court opinions concerning evidentiary presumptions in criminal cases, the majority in *King* held that the inference described in the instruction was being used to prove all of the elements of burglary, and that, therefore, the inference had to "satisfy the reasonable-doubt standard" described in *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357. (78 Ill. App. 3d 879, 888, 397 N.E.2d 905, 912.) In other words, the giving of the instruction would have deprived King of due process of law unless the evidence of King's possession of recently stolen property was sufficient for a rational juror to find beyond a reasonable doubt that King was guilty of burglary.

Neither the majority nor the dissenting opinion in *King*, however, discussed the most recent United States Supreme Court decision on this issue, *County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213. A New York statute imposing a presumption that a firearm in an automobile is illegally possessed by all persons occupying the vehicle

except when the firearm is found on the person of one of the occupants was upheld, where the jury was informed that the presumption was not mandatory and the weapons were found lying across the handbag of one of the occupants in the front section of the automobile. We think that the *Allen* decision indicates that we should take a different approach from that of the reasoning in *King*.

■■ In *Allen* a car in which three men and a 16-year-old girl were riding was stopped on the New York Thruway. Two large-caliber handguns were located in an open handbag which was either on the front seat or the front floor of the car on the passenger side where the girl was sitting. All four people were charged with illegal possession of the gun. The jury was instructed that it could, but was not required to, infer that a defendant possessed the guns from proof of his presence in the car in which the guns were located. Stated the court, "Respondents argue * * * that the validity of the New York presumption must be judged by a 'reasonable doubt' test * * *. Under [that] test, it is argued that a statutory presumption must be rejected unless the evidence necessary to invoke the inference [proof of defendants' presence in the car in which the guns were located] is sufficient for a rational jury to find the inferred fact [defendant's possession of the guns] beyond a reasonable doubt." (442 U.S. 140, 166, 60 L. Ed. 2d 777, 797, 2213, 2229.) The court then indicated that this argument overlooked the difference between a "mandatory presumption which the jury must accept" and a "permissive presumption on which the prosecution is entitled to rely as one not-necessarily-sufficient part of its proof * * *." (442 U.S. 140, 166, 60 L. Ed. 2d 777, 798, 2213, 2229.) Since the jury need not accept a permissive presumption, due process does not require the presumed fact to follow from the proved fact beyond a reasonable doubt. It is sufficient if there is a "rational connection" between the two, and the presumed fact is "more likely than not to flow from" the proved fact. (442 U.S. 140, 165, 60 L. Ed. 2d 777, 797, 99 S. Ct. 2213, 2228.) The court stated that a "permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof * * *." 442 U.S. 140, 157, 60 L. Ed. 2d 777, 792, 2213, 2224.

The challenged jury instruction in the instant case described a permissive presumption. The instruction informed the jury that if it found that defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, it was permitted to infer that he obtained possession of the property by burglary. The jury was also given IPI Criminal No. 14.05, setting out the elements of burglary as follows: "A person commits the crime of burglary who, without authority, knowingly enters a building or any part thereof with

intent to commit theft." The jury was also instructed that the State had the burden of proving each element beyond a reasonable doubt. (IPI Criminal No. 14.06.) Under these circumstances, the permissive instruction did not shift the burden of persuasion.

■■ Furthermore, under the circumstances of this case there was a rational connection between the proved facts, that defendant had possession of recently stolen property and that there was no reasonable explanation of his possession, and the presumed fact, that defendant obtained possession of the property by burglary. Moreover, the presumed fact was "more likely than not to flow from" the proved facts. A short time after Heister's home was burglarized, defendant and King were seen carrying two things taken in the burglary into the home of Clifford Evelhoch. Defendant and King, along with Evelhoch and Eubanks, then went to a spot on the side of a gravel road where a riding lawnmower taken in the burglary had been hidden. The four men loaded the mower into a truck and transported it to Koch's farm where it was sold. Under the *Allen* ruling the giving of the instruction at issue did not deprive defendant of due process of law.

■■ Defendant next contends that he was denied his right under section 8—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b)) to elect to be sentenced under either the "old" or "new" sentencing law, as well as his rights to due process and equal protection, because the trial court did not inform him of the specific sentences that would be imposed under each law. In *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554, this court rejected this very contention. We adhere to that decision and hold that the trial court did not err by not informing defendant of the specific sentences that would be imposed under each sentencing law.

As indicated above, the mittimus issued by the trial court indicates that defendant was sentenced to a term of 7 years' imprisonment for the crime of "[b]urglary and [t]heft." Since theft of property having a value greater than $150 is a Class 3 felony, punishable by a determinate term of imprisonment between 2 and 5 years in the absence of a finding of factors indicating an extended term is appropriate (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(e)(3); Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—8—1(a)(6) and 1005—8—2(a)(5)), defendant contends that the trial court either erroneously sentenced him to a 7-year term of imprisonment for theft, or, intending to sentence him only for burglary, erroneously indicated on the mittimus that the sentence was for burglary and theft. He urges us either to vacate the sentence for theft and remand the cause for resentencing on the theft count, or to remand the cause to permit the trial court to correct the mittimus. The State urges us to remand the cause, pursuant to

*People v. Gortva* (1978), 54 Ill. App. 3d 877, 370 N.E.2d 279, to give the trial court the opportunity to clarify its intent. We think that the State's suggestion is the proper way to deal with the ambiguity.

For the reasons stated, the convictions of burglary and theft entered by the Circuit Court of La Salle County are affirmed. The cause is remanded to that court for the purpose of permitting the trial court to clarify its intention in sentencing defendant.

Convictions affirmed.

ALLOY, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

I must respectfully dissent from the opinion of my colleagues. This is the companion case to *People v. King* (1979), 78 Ill. App. 3d 879, 397 N.E.2d 905, in which I dissented because I felt that the presumption regarding the burglary charge should not have been given to the jury. Since the offense is the same and the evidence is similar, it is not necessary to repeat the analysis in *King*. However, at the time *King* was decided, *County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213, was not brought to my attention nor did my research uncover it, and I feel it is necessary to discuss it in relation to the instant case.

In *Ulster County*, the court held that a New York statute, which provided that, with certain exceptions, the presence of a firearm in an auto is presumptive of its illegal possession by all persons then occupying the vehicle, was a permissive presumption. The court distinguished between a "mandatory presumption which a jury must accept," and a "permissive presumption on which the prosecution is entitled to rely as one not-necessarily-sufficient part of its proof." The court ruled that a permissive presumption is acceptable if there is a "rational connection" between the proved fact and the presumed fact, and the presumed fact is "more likely than not to flow from" the proved fact.

On that basis the majority, in the instant case, holding that the challenged jury instruction described a permissive presumption, rules that it need only satisfy the "rational connection" test. However, *Ulster County* merely states that the permissive presumption, *as used in that case*, need only satisfy the *Leary* test, *i.e.*, a "rational connection" test. The court qualifies the use of the "rational connection" test by saying, "As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the test described in *Leary*." 442 U.S. 140, 167, 60 L. Ed. 2d 777, 798, 99 S. Ct. 2213, 2230.

In the instant case, the defendant, Housby, is charged with burglary, which requires the prosecutor to prove beyond a reasonable doubt that

the defendant (1) without authority (2) knowingly entered a building (3) with intent to commit therein a felony or theft. The State was unable to directly prove any of these elements in that there was no evidence which placed the defendant at the scene of the crime. Instead the State proved that the defendant was in possession of the stolen goods and relied on a common law inference to prove the case. Thus, it is clearly seen that unlike *Ulster County*, in the instant case the presumption is the sole basis for a finding of guilt. It is the only evidence introduced on the offense. "Of course, if a permissive presumption is the only evidence introduced on an element of the offense or on some other issue where the prosecution must satisfy the beyond a reasonable doubt standard, the basic fact must prove the ultimate fact beyond a reasonable doubt." (*Hammontree v. Phelps* (5th Cir. 1979), 605 F.2d 1371, 1374 n.2.) Since the offense must be proven beyond a reasonable doubt, and the presumption is the sole evidence of the burglary, then it is clear that in this case, if any presumption should be given, it must satisfy the reasonable doubt standard.

Assuming, however, that the relation between the proved fact and the presumed fact need only satisfy a "rational connection" test, I believe the presumption in the instant case fails even this test. To meet the rational connection test, the presumed fact must be "more likely than not to flow from" the proved fact. Where the application of a presumption is in dispute, it is extremely difficult to say a rational connection exists. In *Ulster County*, for example, the justices were split four to four as to whether or not the presumption embodied a rational connection. In the case at hand I believe that the possession of stolen goods by itself does not make it more likely than not that the possessor committed the crime. In the absence of any evidence placing the possessor at the scene of the crime, it is difficult to see how mere possession makes it more likely than not that the possessor knowingly entered a building without authority with the intent to commit a theft or felony within.

This is not to say that, in connection with other evidence in the case, the jury cannot draw an inference of burglary from the possession of the stolen goods. Any circumstantial evidence has probative value which the jury is free to accept or reject. However, this probative value need not be more likely than not. Without the presumption the jury will simply be measuring the evidence the prosecution presents (possession) against the evidence that the defendant presents (an explanation). This inference should not be given undue weight in the form of an instruction to the jury creating a presumption.

The use of presumptions in criminal proceedings has long been a source of constitutional problems, and they should be used sparingly, if at all. This is so because presumptions, even permissive ones, can shift the burden of persuasion from the prosecution to the defendant, which is

constitutionally impermissible. The Supreme Court recognized this problem in *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450. There the Supreme Court held that an instruction to the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" was unconstitutional because the jury could have interpreted it so as to place the burden of persuasion on the defendant. First, the jury might have interpreted it as a conclusive presumption. Since the presumption could only be overcome by a preponderance of evidence contrary to the presumption, this had the effect of shifting the burden of persuasion to the defendant, which is constitutionally impermissible. Second, the jury might have interpreted it as a direction to find intent upon proof of the defendant's voluntary actions unless the defendant proved the contrary by some quantum of proof which may well have been greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

It is this second possibility that concerns us in the instant case. The instruction given reads "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by burglary." This instruction had the effect of reducing the burden of the State in that it no longer had to prove the three elements of burglary. The jury may very well have determined that the defendant had to produce more than "some" evidence to reasonably explain his possession and overcome the presumption. This shift denies the defendant his right to due process.

There are several other problems with the instruction in this case. The instruction does not provide a guideline for the degree of proof with which the possession is to be established. Need the jury find that the defendant possessed the goods beyond a reasonable doubt or merely by a preponderance of the evidence. Neither does the instruction provide the jury with a standard for ascertaining the amount of proof necessary to rebut the presumption. Is the amount of proof necessarily a preponderance of the evidence or simply enough to raise a question as to the presumption's proof beyond a reasonable doubt.

The instruction contains no guideline as to who bears the burden of proving the lack of a reasonable explanation for the possession. Must the State affirmatively prove the lack of a reasonable explanation as part of its case or must the defendant provide the reasonable explanation. Still another problem with the instruction given is that it is not neutral. It informs the jury that they may utilize the inference but nowhere is the jury informed that they need not utilize it. This lack of neutrality adds undue weight to the presumption to the defendant's detriment. The result

is a shift in the burden of persuasion to the defendant and this is impermissible. *Sandstrom v. Montana*.

These problems have been noted by other jurisdictions, which have struck down similar presumptions. For example in *State v. Searle* (La. 1976), 339 So.2d 1194, 1202, a statute declaring "a person in the unexplained possession of property recently stolen at the time of a burglary is presumed to have committed the burglary" was declared unconstitutional on the basis that this presumption relieved the prosecution of its burden of proving every element beyond a reasonable doubt and that a State could not shift the burden of ultimate persuasion on an essential element to the defendant. While the presumption in *Searle* is slightly more forceful than in the instant case, the presumption in the instant case has precisely the same effect.

The Colorado Supreme Court, in *Wells v. People* (Colo. 1979), 592 P.2d 1321, rejected an instruction containing an inference quite similar to the one in the instant case. In its analysis, the court explained the role of inferences and presumptions.

> "Unlike a presumption of law, which mandates a conclusion on the part of the jury, an inference merely affords the evidence its natural probative force, which the jury is free to accept or reject. The weight or force to be given the inference rests entirely with the jury. * * * Therefore, an instruction on unexplained and exclusive possession of recently stolen property should make the foregoing emphatically clear so as not to confuse the jury as to its function." 592 P.2d 1321, 1325.

As I have previously explained, the instruction in the present case falls far short of so informing the jury.

For this and the previously mentioned reasons, I dissent.