THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY HUMPHREY *et al.*, Defendants-Appellants.

Third District    No. 80-4

Opinion filed October 21, 1980.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellants.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendants Henry Humphrey and Marcus Mize appeal from their convictions of burglary entered after a jury trial. Each defendant was sentenced to a 3-year term of imprisonment.

Originally defendants were indicted along with Louis Howard. Prior to trial, however, Howard's case was severed because he had made a confession implicating defendants.

At trial Creston Dennis testified for the State that on August 15, 1979, he was in the process of moving into a house he had rented at 5220 Montclair in Peoria Heights. At 1:30 p.m. he locked the house and left to go to work. The electricity had not yet been turned on in the house. On his way home from work Dennis was stopped by police who directed him to the police station where he learned of the burglary at his home and then identified a stereo, a radio, some eight-track tapes, a car battery, and some clothing that had been in the house. Dennis testified that he had given nobody authority to remove these items.

Rose Chase, who lived across the street from Dennis, testified that at around 3 a.m. on August 16, 1979, she saw someone carry a large object from Dennis' yard to the trunk of a car parked in front of his house. Chase then telephoned the police. She looked out again, and the car was gone. Chase said she saw only one car in front of Dennis' house but conceded that there could have been others she did not see. A police dispatcher

testified he received Chase's call at 2:56 a.m. and dispatched Officers Dotson and Gaskins to the scene.

Dotson testified that he arrived near Dennis' house about 1 minute after he received the radio dispatch. He observed a car about three houses down from Dennis' residence traveling away from it. He stopped the car. Mize was driving, and Humphrey and Howard were passengers. Dotson noticed a box containing an AM-FM radio in the back seat. He obtained Mize' consent to look in the trunk and found the stereo unit, the tapes, the car battery, and the clothing. Dotson asked Mize to whom these items belonged, and Mize replied that he had never seen them before.

Officer Gaskins arrived at the site of the arrest, and Dotson left to go to Dennis' residence where he found the back door open. The door jamb was broken. The front door was also open. The lights in the house were not working. Dotson found clothes and paper strewn around the house, and a crowbar in the living room.

Gaskins testified that he asked Humphrey about the clothes in the car. Humphrey replied that they were his, and that he had put them in his car to go to a wedding out of town.

For the defense, defendants Mize and Humphrey both testified. According to their testimony, at about 12:30 a.m. on that date in question Mize went to the house of Humphrey, his friend. The two listened to music and talked. Sometime later, Howard, who lived with Humphrey, arrived with two other men whom neither Mize nor Humphrey had seen before. A conversation took place about some items the two men wanted to sell. The five men then went to 5220 Montclair. Howard and the two men drove in one car, and defendants followed in Mize' car. When they arrived, one of the two unknown men went to the house. The rest of the men followed after a discussion at Mize' car.

One of the two unknown men had told defendants that the electricity was off because they were moving. When defendants walked up to the house, the front door was open. Inside Humphrey used a flashlight to look at the things for sale and paid one man $70 for some clothes, the stereo, some tapes, and a radio. Humphrey did not know whether the car battery or certain other clothing was part of his purchase. He testified that in order to determine if the pants were his size, he merely held a pair next to himself in the light of a flashlight. In any event, the items were carried to the car. The two strangers left in their car, and defendants, along with Howard, left about a minute later, and they were subsequently stopped by Dotson.

Mize testified that when Dotson asked him about the items in the trunk, Mize realized they were probably stolen so he told Dotson he did not know where they came from. Humphrey admitted telling Gaskins the clothes were his, but denied saying anything about going to a wedding out

of town. Humphrey indicated that he said he probably would not be able to go to a wedding because he was arrested. He testified that the wedding was in Peoria.

The jury was given, *inter alia*, the following instruction without objection by the defense:

> "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by committing a burglary." (See IPI Criminal No. 13.21.)

The jury retired to deliberate at 2:50 p.m. At 4:03 p.m. the jurors sent the bailiff to the trial judge with a note containing the following two questions:

> (1) "Is there a legal reason why Howard could not testify in this trial?"
>
> (2) "Are transcripts available?"

To the first question the trial judge responded that there was a legal reason why Howard did not testify. The judge answered the second question, "No." Both of these answers were given outside the presence of and without consultation with defendants, their counsel, or the prosecutor.

At 4:40 p.m. the jurors indicated to the bailiff that they had reached a verdict. Before the jury was brought into the courtroom, the trial judge informed defendants, their counsel, and the prosecutor of the answers he had made to the jury's questions. He explained that he told the jurors there was a legal reason why Howard did not testify because the judge had been informed that Howard intended to plead the fifth amendment if called to testify. The jury was called in and returned the verdicts of guilty.

■■ Defendants' first contention is that they were denied their right to be present at their trial and their right to be represented by counsel when the trial judge answered the jury's two questions in the absence of themselves and their counsel. We note at the outset that defendant did not object to the answers given or to the procedure used in giving them when they were informed of them at trial. Moreover, in their post-trial motion defendants did not complain of the fact that the answers were given outside of their presence and that of defense counsel, nor did they complain of the judge's negative response to the jury's question concerning the availability of transcripts. Defendants only complained that the answer given to the other question was improper.

Accordingly, we believe any error involving the jury's question concerning the availability of transcripts has been waived and any error in answering the questions outside the presence of defendants and their

counsel has also been waived. As stated in *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227, 231:

"Section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 116—1) provides that the motion for a new trial shall be in writing and shall specify the grounds therefor. The general rule is that the failure by a defendant to raise an issue in the written motion constitutes a waiver and the issue cannot be urged as a ground for reversal on review. This waiver rule applies to constitutional as well as to other issues. [Citation.]"

Moreover, we do not believe it would be appropriate to consider the issue pursuant to Supreme Court Rules 451(c) or 615(a) (Ill. Rev. Stat. 1979, ch. 110A, pars. 451(c) and 615(a)), which provide certain exceptions to the general waiver rule. Our supreme court has emphasized that those rules provide for limited exceptions to be used to correct grave errors, or to be applied where the case is close factually and the fundamental fairness of the trial is drawn into question. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) The instant case is not at all close factually. Defendants were apprehended three houses down the street from the Dennis residence minutes after a neighbor saw a man carrying an object from the yard to a nearby car at 3 a.m. Defendants had possession of items from the Dennis residence and gave an unsatisfactory account of how they came into possession of those items. The back door of the Dennis residence had a broken jamb, and a crowbar was found inside. At trial defendants gave the highly improbable explanation that two men whom they had never seen before offered to sell them a rather bizarre assortment of items at the hour of 3 a.m. Humphrey apparently decided the clothes he bought would fit by holding a pair of pants next to himself in the light of a flashlight. Furthermore, the judge's response that transcripts were not avavilable, if an error, was not a grave error, nor did it affect the fundamental fairness of the proceeding. See *People v. Wilkins* (1980), 83 Ill. App. 3d 41, 403 N.E.2d 799, where the court declined to consider a similar issue as plain error.

Although we find that defendants have waived any error associated with the trial judge's response to the jury's question concerning the availability of transcripts, defendants did not object in their post-trial motion to the judge's response to the other question. Accordingly, we will address defendant's contention with respect to that response.

■■ Defendant argues that the only possible result of the court's affirmative answer to the jury's first question was that the jury would draw a negative inference against defendants which would be prejudicial to them. We do not agree that only one inference was possible. The trial

judge merely informed the jury that there was a legal reason why Howard did not testify. The jury was not informed what the legal reason was, so the unauthorized communication was neutral in effect. It no more implied that Howard's testimony would have favored the State than it implied such testimony would have favored defendants. More importantly, the jury was instructed as follows:

> "It is your duty to determine the facts, and to determine them only from the evidence in this case. * * *
> * * *
>
> From time to time it has been the duty of the court to rule on the admissibility of evidence. You must not concern yourselves with the reason for these rulings. * * *"

While the trial judge did not, in the jury's presence, rule on the admissibility of Howard's testimony, the tenor of the above instruction is that the jury should determine the facts and not concern itself with legal reasons for the exclusion of evidence. Although we do not wish to indicate any encouragement to such practices (*People v. Tilley* (1952), 411 Ill. 473, 104 N.E.2d 499, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 641, 73 S. Ct. 23), we believe the possibility of prejudice is too remote to require reversal. *People v. Rettig* (1972), 50 Ill. 2d 317, 278 N.E.2d 781, *cert. denied* (1972), 409 U.S. 895, 34 L. Ed. 2d 152, 93 S. Ct. 186.

Defendants also argue that, taking all these matters together, the court's inadequate and prejudicial responses, combined with defendants' absence, denied defendants a fair trial. This argument presupposes that the court's answers prejudiced defendants. As we have already said, defendants have not shown prejudice. We will not presume prejudice from the mere fact the communication occurred outside defendants' presence. (*Tilley*.) We do not believe that prejudice somehow arises as a "cumulative effect" where a prejudicial effect is not otherwise evident.

■ Defendant's final contention is that the giving of the jury instruction describing the permissive inference of guilt flowing from the unexplained, exclusive possession of recently stolen property violated their right to due process of law in that it deprived them of the presumption of innocence and shifted the burden of persuasion to the defense. They also contend that the instruction failed to meet the requirements established by the United States Supreme Court for evidentiary presumptions in criminal cases.

Inasmuch as defendants did not object to the instruction at trial or in their post-trial motion, this issue is waived. (*Roberts*.) Moreover, we decline to consider the issue under Supreme Court Rule 451(c). As indicated above, this case was not close factually. Furthermore, in light of

our opinion in *People v. Housby* (1980), 82 Ill. App. 3d 537, 403 N.E.2d 62, it is unlikely that the instruction was an error, much less a grave error.

For the reasons stated above, the convictions and sentences entered by the Circuit Court of Peoria County are affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, concurring in part and dissenting in part:
Jury deliberations in the case at bar began at 2:50 p.m. on October 25, 1979. Slightly more than one hour later the jurors asked the following questions of the trial judge:

"Is there a legal reason why Howard could not testify in this trial? Are transcripts available?"

To the first of these questions the trial judge responded that there was a legal reason why Howard did not testify. In response to the second question, the trial judge merely said "No." Both of these answers were given outside the presence of and without consultation with the defendants, their counsel, or the prosecuting attorney.

The defendants contend that the cumulative effect of the trial judge's responses to the jury's questions and the giving of those responses outside the presence of counsel and the defendants constitutes reversible error. It is the State's position that the defendants' failure to include as error in their joint motion for a new trial any of these contentions except the trial judge's response regarding the failure of Howard to testify has resulted in a waiver of these issues. In addition, the State points out that none of these alleged errors was objected to during trial. I note that the responses in question were given outside the presence of defendants and counsel, a situation which would seem to render meaningful objection at trial moot since any prejudicial effort upon the jury would already have occurred.

It is well established that consideration of issues on review is waived if the appellant has failed to properly preserve the alleged errors in a post-trial motion. (*People v. Whittaker* (1978), 56 Ill. App. 3d 430, 373 N.E.2d 20.) Even alleged errors of constitutional magnitude can be so waived. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) However, a reviewing court has the authority to consider the alleged error if it is determined to be plain error substantially affecting justice and the fairness of the proceeding or if the interests of justice require review. (Ill. Rev. Stat. 1979, ch. 110A, pars. 451 (c) and 615 (a).) In the instant case, the majority has concluded that the defendants waived the issue of the judge's response concerning the availability of transcripts, and that the possibility of prejudice from the judge's answer to the question regarding Howard's

testimony was too remote to warrant reversal. I must respectfully dissent, because I believe the cumulative effect of the errors alleged by the defendant substantially affected the fairness of the trial.

The sixth amendment to the United States Constitution guarantees every criminal defendant the right to be present in the courtroom at every stage of his trial and the right to be represented by counsel at every such stage. (See *Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057.) The Illinois Constitution has also long recognized that every person charged with an offense has a right to be present in person and participate at every stage, part and proceeding of his prosecution which affects his substantial rights, from the time of his arraignment to his final sentence and that he has the right to counsel throughout the proceedings. Ill. Const. 1970, art. 1, §8; *People v. Beck* (1922), 305 Ill. 593, 137 N.E. 454; *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96.

The presence of the defendant is assured so that the defendant knows all that occurs in his case and can object and act in the way he thinks best to secure his rights and protect himself. The right to be present covers the period of communications between the court and a deliberating jury. *People v. Lewis* (1979), 73 Ill. App. 3d 361, 386 N.E.2d 910.

In spite of the constitutional pronouncements regarding the defendant's right to be present at all stages of his trial, the rule has emerged in Illinois that judgments will not be reversed when it is apparent no injury resulted from a communication to a jury either by the court or by a third person outside the presence of defendant or his counsel. (*People v. Rettig* (1972), 50 Ill. 2d 317, 278 N.E.2d 781; *People v. Tilley* (1952), 411 Ill. 473, 104 N.E.2d 499; *People v. Brothers* (1932), 347 Ill. 530, 180 N.E. 442.) The critical inquiry then becomes whether defendants were prejudiced when the trial judge responded to the two jury questions outside the presence of defendants or their counsel.

In *People v. Rohwedder* (1967), 78 Ill. App. 2d 211, 223 N.E.2d 1, a judge not connected with the case, apparently as a favor to the trial judge who had left the building during jury deliberations, caused the jury to be brought before him for inquiry as to whether the jury needed additional time to deliberate. This was done in the absence of defendants and their attorneys and without prior consultation with them. The appellate court reversed the defendants' convictions and remanded for a new trial, citing to *People v. Beck* and finding that the judge's inquiry was a critical stage of defendants' trial and as such they had a right to be present along with counsel. In *People v. Harmon* (1968), 104 Ill. App. 2d 294, 224 N.E.2d 358, after the jury has retired to deliberate, the bailiff advised the judge that the jury had a legal question. In response, the judge told the bailiff to advise the jury that legal questions would be resolved by the court. This response was made outside the presence of the defendant and his counsel

and was considered by the appellate court sufficiently prejudicial to require reversal of the conviction.

In the case at bar questions were asked concerning the testimony of a co-indictee and the availability of transcripts for purposes of reviewing testimony. These questions concerned crucial matters in defendants' trial so that injury to the defendants may be presumed from the trial judge's decision to respond outside the presence of defendants or their counsel.

In addition, the answers given to the jury's questions compound the injury to the defendants. The first question asked was whether there was a legal reason why co-indictee Howard could not testify. In replying to that question, the trial judge said there was a legal reason why Howard did not testify. From this response the jury might have inferred a number of things: that Howard's testimony would not corroborate the defendants' testimony; that Howard was exercising his right to remain silent so as to avoid implicating himself; that Howard had already been convicted; that Howard was unavailable to testify because he was incarcerated or sick or simply out of town. Any of these inferences, though admittedly speculative, could have been prejudicial to the defendants.

The second question asked concerned the availability of transcripts. To this question the judge simply responded, "No." The summary rejection of the jury's request suggests that the judge erroneously believed he had no discretion regarding the jury's request for transcripts. Because the decision on whether or not to grant a jury's request for a review of testimony rests in the discretion of the trial court (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577), error occurs when the trial court refuses to exercise discretion under the erroneous belief that it has no discretion. *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.

In a case factually similar to the case at bar, the Illinois Supreme Court reversed and remanded for a new trial where the judge responded to a jury request for the testimony of three witnesses by saying "No." The court held that the answer disclosed a belief by the trial court that it did not have discretion to consider the request. (*People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570.) As in *Autman*, the defendants here should receive a new trial.

The second issue raised by the defendants concerned the giving of the jury instruction describing the permissive inference of guilt flowing from the unexplained, exclusive possession of recently stolen property. They contend the giving of this instruction violated their right to due process of law in that it deprived them of the presumption of innocence and shifted the burden of persuasion to the defense.

Although I am in agreement with the majority opinion that the jury instruction issue was waived by the defendants due to their failure to object to the instruction at trial or in their post-trial motion, and that the

issue is not cognizable under Supreme Court Rule 451(c), I cannot agree that it is unlikely that the instruction was an error. My objections to the application of the instruction given in a factual situation such as that in the case at bar were stated in my dissenting opinions in *People v. Housby* (1980), 82 Ill. App. 3d 537, 403 N.E.2d 62, and *People v. King* (1979), 78 Ill. App. 3d 879, 397 N.E.2d 905. I reaffirm my position as expressed in those opinions regarding the use of the disputed instruction.

For the above reasons I concur in part and must respectfully dissent in part and would reverse and remand for a new trial.