THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT MALLEK, Defendant-Appellant.

Third District    No. 3—02—0755

Opinion filed May 14, 2004.

HOLDRIDGE, P.J., dissenting.

Donna K. Kelly, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Lawrence M. Bauer and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:
Defendant Robert Mallek was convicted of retail theft (720 ILCS 5/16A—3(a) (West 2002)) and was sentenced to an extended term of six years' imprisonment. On appeal the defendant contends that: (1) the trial court erred in failing to hold a fitness hearing; (2) he was deprived of a fair trial when the State elicited evidence of his postarrest silence; and (3) the trial court erred in failing to consider the jury's request for transcripts of the trial testimony. We affirm.

Fitness Hearing
On April 29, 2002, defendant's appointed counsel, Assistant Public Defender Hugh Toner, filed a motion for a psychological examination to determine defendant's fitness to stand trial. On the same date, the defendant filed a *pro se* motion to represent himself. In that motion the defendant stated that he was competent and that a fitness hearing was unnecessary. The trial judge appointed Dr. Jane Velez to examine the defendant.

On August 6, 2002, the parties appeared in court for trial. The defendant indicated that he wanted to represent himself. The trial court noted that it had not received a report from Dr. Velez. Defense counsel then tendered a copy of the report to the court, commenting that the report found the defendant "fit and not qualified for an insanity defense." The court then asked:
"THE COURT: So you're withdrawing—
MR. TONER [Defense counsel]: That would be correct, Judge."
The court then stated that the defendant appeared to be rational and intelligent and it found that defendant had knowingly and voluntarily waived his right to counsel. On appeal, defendant maintains that the trial court erred in failing to hold a fitness hearing. Relying on *People v. Cleer*, 328 Ill. App. 3d 428, 766 N.E.2d 311 (2002),

the defendant argues that a *bona fide* doubt of fitness was implicitly found when the court granted defendant's motion for a psychological examination. We disagree.

■ In *Cleer*, we held that "[u]pon accepting the motion [for a fitness evaluation] and appointing a qualified expert, the trial court implicitly concluded that a *bona fide* doubt as to the defendant's fitness did exist." *Cleer*, 328 Ill. App. 3d at 431, 766 N.E.2d at 314. We further held that because a *bona fide* doubt has been raised when the court grants the motion for an evaluation, the trial court then must conduct a fitness hearing. *Cleer*, 328 Ill. App. 3d 428, 766 N.E.2d 311.

Recently, the Illinois Appellate Court, First District, rejected our ruling in *Cleer* in *People v. Hill*, 345 Ill. App. 3d 620, 803 N.E.2d 138 (2003). The *Hill* court stated that the holding of *Cleer* is contrary to the language of section 104—11(b) of the Code of Criminal Procedure of 1963 and Illinois Supreme Court precedent. Section 104—11(b) states:

> "(b) Upon request of the defendant that a qualified expert be appointed to examine [the defendant] to determine prior to trial if a bona fide doubt as to [the defendant's] fitness to stand trial may be raised, the court, in its discretion, may order an appropriate examination." 725 ILCS 5/104—11(b) (West 2002).

The court in *Hill* pointed out that the plain language of section 104—11(b) contemplates the appointment of an expert to determine *whether* a *bona fide* doubt of the defendant's fitness "may be raised." The *Hill* court submitted that the language of section 104—11(b) lends no support to the holding of *Cleer*. We reached the same conclusion in *People v. Vernon*, 346 Ill. App. 3d 775, 779, 805 N.E.2d 1222, 1225 (2004), noting that appointment of an expert under section 104—11(b) "clearly cannot be considered a conclusion, implicit or otherwise, concerning a *bona fide* doubt of the defendant's fitness."

The *Hill* and *Vernon* courts also rejected *Cleer* by suggesting that its holding contradicted Illinois Supreme Court precedent such as *People v. Harris*, 206 Ill. 2d 293, 794 N.E.2d 181 (2002), *People v. Burt*, 205 Ill. 2d 28, 792 N.E.2d 1250 (2001), *People v. Easley*, 192 Ill. 2d 307, 736 N.E.2d 975 (2000), and *People v. Eddmonds*, 143 Ill. 2d 501, 578 N.E.2d 952 (1991). In those cases, our supreme court stated that when determining whether a *bona fide* doubt of the defendant's fitness exists, the trial court is to consider the following factors: (1) the defendant's irrational behavior; (2) the defendant's demeanor during the proceedings; and (3) any previous medical opinion on the defendant's fitness. The *Hill* and *Vernon* courts noted that if the granting of the defendant's motion for a fitness evaluation was sufficient to create a *bona fide* doubt of the defendant's fitness, these factors would become irrelevant. We agree.

For these reasons, we find that the trial court's decision to order an evaluation of defendant's fitness did not create a *bona fide* doubt of fitness. Accordingly, the court did not abuse its discretion in failing to hold a fitness hearing. As succinctly stated in *People v. Kalwa*, 306 Ill. App. 3d 601, 613, 714 N.E.2d 1023, 1031 (1999):

> "It is well settled in Illinois that where no *bona fide* doubt as to a defendant's competency to stand trial exists, a psychiatric report shows defendant fit and the defendant moves for or acquiesces in the withdrawal of a petition requesting a fitness hearing, there is no abuse of discretion where the court fails to hold a fitness hearing *sua sponte. People v. Hicks*, 35 Ill. 2d 390, 394, 220 N.E.2d 461 (1966); *People v. Mayhew*, 18 Ill. App. 3d 483, 488, 309 N.E.2d 672 (1974)."

### Testimony Concerning Defendant's Postarrest Silence

The defendant next asserts that he was denied a fair trial when the State elicited testimony regarding defendant's postarrest silence. The defendant acknowledges that he failed to object to the allegedly improper testimony and he also failed to file a posttrial motion. He asks that we consider this issue under the plain error rule, which permits a reviewing court to consider a trial error that has not been properly preserved if the evidence is closely balanced or if the error is so fundamental and of such a magnitude that the defendant was denied a fair trial. See *People v. Herrett*, 137 Ill. 2d 195, 561 N.E.2d 1 (1990). We therefore consider the evidence presented at defendant's trial.

Wesley Williamson, an assistant manager of Kroger's grocery store in Peoria, Illinois, testified that the defendant approached him on January 9, 2002, and asked where the eyeglass repair kits were located. The defendant seemed jumpy and erratic and knocked items off a display shelf in front of the pharmacy as Williamson showed defendant where the eyeglass kits were. Williamson started to pick up the fallen items, and defendant helped him. After that, defendant proceeded toward the rear of the store. Because of defendant's nervous activity, Williamson watched the defendant walk toward the back of the store and saw him put the eyeglass repair kit in his pocket. Williamson continued to observe defendant's progress through the store and, as defendant started toward the front, Williamson stood at the exit portion of the checkout lanes. He saw the defendant check out and pay for a few items; the eyeglass repair kit was not among those items. The defendant then left the checkout lane and turned right, heading toward the exit door. Williamson stopped defendant and asked him to go upstairs. Once there, Williamson asked the defendant for the merchandise in his pocket. Defendant removed the eyeglass repair kit from his left front pocket and handed it to Williamson.

The defendant, acting *pro se*, cross-examined Williamson and established that there was a customer service desk between the checkout lanes and the exit where such things as cigarettes and money orders could be purchased. Williamson testified that there were two customer service windows; one was manned and one was unmanned. The defendant then inquired:

"Q. Okay. So by you stopping me to—before I could go anywhere else, then you—you would not know my intention, what I was doing, is that correct, by and where you stopped me?

A. I stopped you after you passed through the check lane, turned right and was [sic] headed towards the door."

On redirect, Williamson testified that as defendant left the checkout lane he turned toward the right and headed straight toward the exit door. Had defendant been heading toward the customer service desk, he would have gone in a different direction. At the time defendant was stopped, he was proceeding away from the customer service desk. The defendant then further questioned Williamson on re-cross-examination:

"Q. So if you stopped me before I got to where I was going, how did you know where I was going to go?

A. It was my opinion when you exited the check lane after checking out, turned right and went straight towards the door, that your intention was to exit the store. That's when I stopped you.

Q. Okay. That's your opinion. But now if you did not stop me at the time you stopped me, is it true that I could have went to the checkout customer service desk to pay for that item?

A. Only if you would have turned to the left and came back to the window that was open with the lady standing there."

After the State concluded its case, the parties engaged in a jury instruction conference. Defendant sought to instruct the jury that a presumption of intent to steal may arise when one removes merchandise beyond the last known station for receiving payment. The trial judge noted that it had not been established by the evidence that one could pay for merchandise other than cigarettes or money orders beyond the checkout lanes. The defendant then recalled Williamson to the stand in his case in chief, and he testified that one could pay for merchandise at the customer service desk.

In rebuttal, the People called police officer Thomas Bond, who had questioned defendant at the store:

"Q. Officer Bond, did you proceed then to question Mr. Mallek concerning items that were taken from the Kroger's store?

A. Yes.

Q. *At any point during your conversation with Mr. Mallek, did he indicate to you that it was his intent to pay for those items at the customer service window?*

A. *No.*

Q. Did he tell you that he proceeded through the checkout without paying for the item that was in his pocket?

A. Yes.

Q. What was his explanation for not paying for that item?

A. He said he forgot.

Q. He forgot he had the item in his pocket?

A. Yes." (Emphasis added.)

Following closing arguments and jury deliberations, the defendant was found guilty of retail theft.

Assuming for the sake of argument that the above-emphasized testimony is an impermissible comment on the defendant's postarrest silence (see *People v. Clark*, 335 Ill. App. 3d 758, 781 N.E.2d 1126 (2002) (comment on postarrest silence is excluded as a matter of Illinois evidentiary law); but see *People v. Frieberg*, 147 Ill. 2d 326, 589 N.E.2d 508 (1992) (noting that Illinois recognizes exception to constitutional rule of *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), prohibiting impeachment by means of postarrest silence, where defendant has made prior inconsistent statements at time of arrest)), we find that this issue has been waived. The evidence is uncontradicted that the defendant put the eyeglass repair kit in his pocket and did not pay for it when he went through the checkout lane. Defendant's argument that he could have paid for the item at the customer service desk is untenable in light of Williamson's unequivocal testimony that after leaving the checkout lane defendant turned right and was heading for the door, not towards the customer service desk.

We also find that any error in commenting on defendant's silence did not deprive him of a fair trial. As our supreme court noted in *Herrett*, "a comment upon a defendant's post-arrest silence, while improper, is not an error of such magnitude as to clearly deprive the defendant of a fair trial." *Herrett*, 137 Ill. 2d at 215, 561 N.E.2d at 10. We find no plain error.

### Jury's Request for Transcripts

Defendant's final contention is that the trial court erred in refusing the jury's request for transcripts of Williamson's testimony. After approximately 30 minutes of deliberations, the jury sent out the following note:

"Manager's testimony re: incident of knocking over display. Did the defendant ask for the item that was listed? Manager's first testimony. Mgr. testimony re: last point for receiving payment."

After discussing the matter with the prosecutor and the defendant, the judge called the jury into the courtroom and told the jury that he

could not answer its question regarding whether defendant asked for the item that was listed. The judge instructed the jury that it needed to decide the case on the basis of the evidence that had been presented to it. The foreperson of the jury then stated that the jury wanted to know whether it was possible to review the testimony indicated on the note in a written form. The judge responded that it would be several days before the court reporter would have a transcript in written form. The foreperson stated, "All right. That was our question."

Defendant asserts that the trial court erred in not considering the jury's request, thereby indicating a failure to exercise its discretion. See *People v. Queen*, 56 Ill. 2d 560, 310 N.E.2d 166 (1974); *People v. Coleman*, 179 Ill. App. 3d 410, 534 N.E.2d 583 (1989) (trial court's failure to exercise discretion regarding transcript requests was error where court did not realize it had discretion to act). Assuming, again, that error occurred (but see *People v. Olinger*, 112 Ill. 2d 324, 349, 493 N.E.2d 579, 591 (1986) (trial court's response that jury must decide case on basis of courtroom testimony and that it could not have testimony of witnesses read to jury did not evidence failure to exercise discretion)), we find that it has been waived. As we have already indicated, the evidence in this case was not closely balanced. In addition, a trial judge's erroneous response to a jury concerning the availability of transcripts does not affect the fundamental fairness of the proceedings. *People v. Humphrey*, 89 Ill. App. 3d 673, 411 N.E.2d 1228 (1980); *People v. Wilkins*, 83 Ill. App. 3d 41, 403 N.E.2d 799 (1980). We find no plain error.

■ Finally, defendant argues that his conviction should be reversed on the basis of cumulative error. In our opinion, however, any errors that occurred during defendant's trial were far from egregious, and defendant received a fair trial, if not a perfect one. See *People v. Doyle*, 328 Ill. App. 3d 1, 765 N.E.2d 85 (2002) (generally no cumulative error where alleged errors do not constitute reversible error on individual issues).

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, dissenting:
I respectfully dissent. I disagree with the majority's analysis of this court's holding regarding fitness hearings in *People v. Cleer*, 328 Ill. App. 3d 428, 766 N.E.2d 311 (2002).

The procedures concerning fitness determinations for criminal defendants are governed by section 104—11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/101—1 *et seq.* (West 2002)). Section 104—11 states:

"(a) The issue of the defendant's fitness for trial *** may be raised by the defense, the State or the Court ***. When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further.

(b) Upon request of the defendant that a qualified expert be appointed to examine [the defendant] to determine prior to trial if a bona fide doubt as to [the defendant's] fitness to stand trial may be raised, the court, in its discretion, may order an appropriate examination." 725 ILCS 5/104—11(a), (b) (West 2002).

The defendant in this case relies upon the ruling in *Cleer*, 328 Ill. App. 3d 428, 766 N.E.2d 311, for the proposition that the trial court erred by failing to hold a fitness hearing. In *Cleer*, we held that "[u]pon accepting [a] motion [for a fitness evaluation] and appointing a qualified expert, [a] trial court implicitly conclude[s] that a *bona fide* doubt as to the defendant's fitness *** exist[s]." *Cleer*, 328 Ill. App. 3d at 431, 766 N.E.2d at 314. We further held that because a *bona fide* doubt has been raised when the court grants the motion for an evaluation, the trial court then must conduct a fitness hearing. *Cleer*, 328 Ill. App. 3d 428, 766 N.E.2d 311.

Recently, the Illinois Appellate Court, First District, rejected our ruling in *Cleer* in *People v. Hill*, 345 Ill. App. 3d 620, 803 N.E.2d 138 (2003). The *Hill* court stated that the holding of *Cleer* is contrary to the language of section 104—11(b) and Illinois Supreme Court precedent.

The court in *Hill* points out that the plain language of section 104—11(b) contemplates the appointment of an expert to determine whether a *bona fide* doubt of the defendant's fitness "may be raised." The *Hill* court submits that the language of section 104—11(b) lends no support to the holding of *Cleer*. I agree that a literal reading of section 104—11(b) conflicts with our ruling in *Cleer*. Therefore, it is necessary to further clarify the holding of *Cleer*.

Read literally, the language of section 104—11(b) leads to an absurd result because it does not comport with trial court practice. The term *"bona fide"* is a Latin phrase meaning "good faith." Black's Law Dictionary 168 (7th ed. 1999). A trial court would not exercise its discretion to grant a defendant's request for a fitness evaluation without the defendant first stating a good-faith basis for the request. Moreover, a trial court would not grant a defendant's request for an evaluation without defense counsel stating some factual basis for the

request. However, under a literal reading of section 104—11(b), a defendant's request for a fitness evaluation could be granted regardless of whether the defendant stated a good-faith factual basis for the request. The appointed expert then would be placed in the absurd position of determining whether there had been a good-faith basis for the request in the first place.

Established rules of statutory construction, however, prevent a literal reading of a statute if such a reading would lead to an absurd result. *People v. Hanna*, 207 Ill. 2d 486, 800 N.E.2d 1201 (2003). I would decline to read section 104—11(b) literally because to do so would lead to an absurd result. Instead, I would interpret section 104—11(b) to mean that once the defendant has raised a good-faith doubt concerning his fitness to stand trial, the trial court may exercise its discretion and appoint an expert to examine the defendant and to render an opinion concerning the defendant's fitness. The expert's evaluation then is evidence to be considered by the court at the subsequent fitness hearing required by section 104—11(a).

The *Hill* court also rejected *Cleer* by asserting that its holding contradicted Illinois Supreme Court precedent from *People v. Harris*, 206 Ill. 2d 293, 794 N.E.2d 181 (2002), *People v. Burt*, 205 Ill. 2d 28, 792 N.E.2d 1250 (2001), *People v. Easley*, 192 Ill. 2d 307, 736 N.E.2d 975 (2000), and *People v. Eddmonds*, 143 Ill. 2d 501, 578 N.E.2d 952 (1991). In these cases, our supreme court stated that when determining whether a *bona fide* doubt of the defendant's fitness exists, trial courts are to consider the following factors: (1) the defendant's irrational behavior; (2) the defendant's demeanor during the proceedings; and (3) any previous medical opinion on the defendant's fitness. The *Hill* court asserted that if the granting of the defendant's motion for a fitness evaluation was sufficient to create a *bona fide* doubt of the defendant's fitness, these factors would become irrelevant. I disagree.

The factors cited by the *Hill* court contain the kind of factual information required for a trial court to find that a good-faith basis exists to grant the defendant's request for an evaluation. Thus, our holding in *Cleer* does not contradict Illinois Supreme Court precedent as asserted by the *Hill* court.

In the present case, the trial court granted the defendant's motion for a fitness evaluation. Under *Cleer*, once the court granted the motion, the trial court implicitly found a *bona fide* doubt of the defendant's fitness to exist. Having determined that a *bona fide* doubt existed, it was mandatory for the trial court to hold a fitness hearing under the second sentence of section 104—11(a).

Merely accepting the parties' stipulation to the psychiatrist's find-

ing of fitness did not constitute a fitness determination by the trial court. The trial court must hold a hearing under section 104—11(a) in which it makes an affirmative ruling concerning the defendant's fitness. *People v. Contorno*, 322 Ill. App. 3d 177, 750 N.E.2d 290 (2001).

Because the trial court did not exercise its discretion to determine the defendant's fitness, the defendant's due process rights were violated. Under *Cleer*, I would remand the cause for a proper fitness hearing and, if necessary, a new trial.