NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220818-U

NO. 4-22-0818

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cass County |
| ROBERT D. HARRIS, | ) | No. 21CF1 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Timothy J. Wessel, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding defendant was not entitled to a new trial based on his cumulative-error claim.

¶ 2    In January 2021, the State charged defendant, Robert D. Harris, *inter alia* with six counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2020)) pertaining to the shooting deaths of Brenda Crum and Kathleen Wzientek and one count of attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1 (West 2020)) in connection with the discharge of a firearm in the direction of David Miller. In May 2022, a jury found defendant guilty on all counts.

¶ 3    On appeal, defendant contends he was deprived of a fair trial due to cumulative error based on the following: (1) discovery violations, (2) the lack of foundation for evidence found in defendant's vehicle, (3) the admission of improper evidence of a racist statement made by defendant, (4) the giving of an erroneous attempt (first degree murder) jury instruction,

(5) improper closing arguments by the State, and (6) a violation of defendant's right to a public trial.

¶ 4        We determine defendant forfeited his arguments concerning all alleged errors except for the discovery violations and the lack of foundation for evidence found in his vehicle. Regarding those preserved issues, we find no error. Because a defendant cannot use a cumulative-error argument to combine multiple unpreserved, forfeited arguments to transform them into preserved claims, we find no cumulative error. Accordingly, we affirm.

¶ 5                                I. BACKGROUND

¶ 6        The State charged defendant in connection with the January 10, 2021, shooting deaths of Crum and Wzientek, and the shooting of, or at, Miller. In May 2022, a jury trial was held.

¶ 7        At trial, Vicki DeFord, the Cass County 911 coordinator, testified she received multiple calls about a double homicide shortly after 1 p.m. on January 10, 2021. Travis Birdsell, a police officer with the Beardstown Police Department, responded to the call. Birdsell found Miller outside the house armed with a firearm, which Miller surrendered to Birdsell. Birdsell found two women, who were later identified as Crum and Wzientek, in the back bedroom. There were pools of blood near the women, and Birdsell did not see any signs of breathing. Miller told Birdsell he had a head injury, but Birdsell did not observe an injury or any blood.

¶ 8        At the time of the shooting, Miller lived with his mother, Wzientek, and his girlfriend, Lisa Pinkerton. Miller told Birdsell Wzientek had been in an "on-again/off-again" relationship with defendant. The night before the shooting, Wzientek had ended her relationship with defendant. On the date of the shooting, Miller was home with Wzientek and Crum when defendant arrived in a maroon Pontiac G6 at about 1 p.m., and Miller went to the front door and

locked it. Miller saw the deadbolt to the front door unlock twice, and Miller locked it twice in response. When the deadbolt unlocked a third time, Miller opened the door and told defendant he was not welcome. Defendant responded, "[O]h, yeah. I have a gun," then pointed a gun at Miller's head and pulled the trigger. Miller reacted by leaning backward and felt a sharp pain on the top of his head. He then fell onto the floor, believing he had been shot. He stated the bullet ricocheted off the center of his head, leaving a dent. Miller described defendant's gun as an older style .22-caliber or .25-caliber semiautomatic weapon.

¶ 9          Miller saw defendant move down the hallway. He heard five or six gunshots and then heard the front door close. Miller stood up and went to the window and saw defendant's car was gone. Miller went to his bedroom and got a gun. He then found Wzientek and Crum with multiple gunshot wounds. Miller ran outside and called 911. When emergency responders arrived, they examined Miller's head and took pictures. Miller stated there were "markings" but no skull penetration or major bleeding. Paramedics told him he probably had a concussion, but he did not seek treatment.

¶ 10          Pinkerton testified she saw defendant drive past the house a couple of times in his Pontiac on the morning of the shooting. Bobbi Harris, defendant's daughter, testified she spoke to defendant that same day, and defendant said he was "upset" and "going to kill them." Bobbi later received phone calls from other people telling her "stuff had happened in town" at Wzientek's house. Defendant then called her again and, without stating what he had done, asked if he should turn himself in or kill himself. She told him to tell her where he was or to turn himself in. Defendant was going to meet her but never arrived.

¶ 11          John Harris, defendant's brother, testified he spoke to defendant on the phone after learning something had happened at Wzientek's house. Defendant told John he went to the

door of the house, but Miller would not let him in, so he pushed the door open and entered. Defendant did not discuss what happened in the house but said he was thinking of killing himself, and John thought defendant said he had a gun.

¶ 12        Officer Seth Thornley of the Illinois Department of Conservation Police and Master Sergeant Brice Hager of the Illinois State Police testified law enforcement arrested defendant in rural Morgan County. Thornley testified without objection that, while his weapon was drawn and Hager was placing defendant in handcuffs, defendant said "he was not black and not to shoot him." Hager indicated he also had his weapon drawn at that time. Neither Thornley nor Hager was involved in seizing, towing, or searching defendant's Pontiac G6, which was at the scene of the arrest.

¶ 13        Erin Bowers, a crime scene investigator with the Illinois State Police, processed the scene of the shooting. Bowers collected fired cartridge casings from the threshold of the front door, the hallway, and the bedroom. She also photographed a wound on the top of Miller's head but could not say whether it was caused by a gunshot. Bowers further attended the autopsies of Wzientek and Crum, where she collected fingerprints, buccal swabs, blood, hairs, and projectiles recovered from their bodies.

¶ 14        Brandi Rae Field, a crime scene investigator with the Illinois State Police, testified she processed defendant's Pontiac G6, which was parked in a secure area at the Jacksonville, Illinois, police department. In the trunk, she found a gun box containing an unloaded .22-caliber Rugar Mark pistol, a magazine, and a box of bullets. There was a bloodlike substance on the barrel of the gun, which tested positive during a presumptive blood test. Field testified, given her experience, the substance could have been splatter from an item that was shot with the gun. She found a bag of bullets and other "gun related items" under the driver's seat.

Field also photographed defendant at the Morgan County jail. There were red stains on his jacket, as well as stains on his shirt and belt. She also collected fingerprints and a buccal swab from defendant. Field tested defendant for gunshot residue but stated gunshot residue cannot be found when a .22-caliber firearm is used.

¶ 15 The parties entered two stipulations involving the chain of custody of much of the State's evidence, but those stipulations did not include the transport of defendant's vehicle from the scene of his arrest to the Jacksonville Police Department. The State offered exhibits related to Field's testimony into evidence, and defendant asked the trial court to reserve ruling on the matter until a chain-of-custody foundation was provided showing how the vehicle got from the scene of the arrest to the police department. The court admitted the evidence over defendant's objection.

¶ 16 Travis Dunlap, a special agent with the Illinois State Police, testified he assisted in the investigation of the shootings. Dunlap interviewed defendant, who denied knowing why he was being interviewed. Defendant said he had gotten into a "pushing" fight with Miller and said he was not sure what the fight was about. Dunlap testified it was possible Miller thought he was shot but actually incurred his head injury by hitting his head on a piece of furniture. He also stated a .22-caliber firearm could produce gunshot residue.

¶ 17 The defense objected to the proposed testimony of the State's four expert witnesses, Katharine Mayland, Kelly Maciejewski, Kathryn Doolin, and Scott Denton, on the basis the State had not disclosed their qualifications in the form of providing *curriculum vitae* (CVs) before trial as required by Illinois Supreme Court Rule 412(a)(iv) (eff. Mar. 1, 2001). Defense counsel argued the State's discovery violation prohibited the defense from being able to determine whether additional expert witnesses were necessary. The State responded it disclosed

reports from the experts months earlier and would have provided CVs had it been asked. The State argued questions about qualifications normally occurred during testimony so the trial court could determine if the witnesses qualified as experts. The State further noted the court previously asked the defense if they had everything they had asked for in discovery, and defense counsel answered "yes." The State offered to provide CVs for each expert that day.

¶ 18    The trial court took a recess to consider the issue. When the court returned, it overruled the objection, stating although the State did not provide the CVs before trial, the defense also stated during at least three pretrial conferences it had no discovery issues or motions. The court told the defense it could have time that morning for the State to disclose the CVs to prepare for cross-examination. Defense counsel responded he would like a continuing objection to the witnesses' testimony and stated: "I'm not going to cause delay for unnecessary inquiry into the *bona fides* of those experts for the purpose of judicial economy and efficiency, but I don't want that to be deemed as a forfeiture or a waiver of my position and my objection." The court held it would allow the witnesses to testify over defendant's continuing objection. During cross-examination of each expert, the defense did not ask any questions concerning their qualifications.

¶ 19    Denton testified he performed the autopsies on Crum and Wzientek. He described the gunshot wounds each victim incurred and verified both women died from multiple gunshot wounds. Mayland, who the trial court qualified as an expert in latent print examination, testified she found a latent print suitable for examination on the outer sleeve of the ammunition box. The latent print matched the known standard of defendant.

¶ 20    Maciejewski, who the trial court qualified as an expert in DNA testing, testified Crum was a contributor to DNA in blood found on defendant's jeans. Defendant was a major

contributor to DNA found on the gun's grip and a single contributor to DNA found on the gun's trigger. Further, Crum was a major contributor to blood on the gun's barrel. Wzientek was a very minor, or inconclusive, contributor to blood on the barrel.

¶ 21 Doolin, who the trial court qualified as an expert in firearms identification, testified the recovered cartridge casings were fired from the same .22-caliber firearm. The fired projectile from the bedroom "was ID'd to the firearm submitted," which the record shows was the firearm found in defendant's vehicle. Projectiles recovered from Crum's and Wzientek's autopsies had been fired from the firearm.

¶ 22 The State sought to add William McFadden, the owner of Bill's Towing in Jacksonville, Illinois, as a witness. The defense objected McFadden had not been previously disclosed as a witness, stating "[w]e stand on our objection," presumably in reference to its previous objection concerning the failure to disclose evidence. The defense did not request a continuance to investigate the newly disclosed witness. The State argued McFadden's testimony was in response to cross-examination showing Thornley and Hager did not follow defendant's vehicle when it was towed to the police department. The trial court allowed the testimony, finding the State's failure to disclose McFadden as a witness was not purposeful and the testimony did not unduly prejudice defendant. McFadden testified Trooper Smith of the Illinois State Police told him to tow defendant's Pontiac G6 from the scene of defendant's arrest to the Jacksonville Police Department. McFadden made no stops on the way, and no one followed him. Law enforcement did not ride with him.

¶ 23 During closing argument, the State, without objection from the defense, described the mental state to prove defendant guilty of attempt (first degree murder) as having the intent to kill. The State also informed the jury, without objection, that defendant told his daughter, " 'I

did it. I killed them,' " and told his brother, " 'I did it.' " During the defense's closing argument, defendant's counsel also argued the State was required to prove defendant "intended to kill [Miller]."

¶ 24 During rebuttal argument, the prosecutor told the jury, without objection from the defense:

> "[O]ne thing I did not like about prosecuting, and I still don't, we never get to meet the people who died. We meet with their family. We get to suffer, not like they do, but we have to prove that someone is responsible for how they died and why they died."

¶ 25 Also, without objection from the defense, the trial court instructed the jury the mental state for attempt (first degree murder) was the intent to kill. During the jury's deliberations, the court received a question from the jury. Noting the parties and counsel were present and the courtroom was closed, the court addressed the question. There was no objection to the court considering the jury's question in the closed courtroom.

¶ 26 The jury found defendant guilty on all counts. Defendant filed a motion for a new trial, arguing in part (1) the testifying experts were not properly disclosed and should have been barred from testifying, (2) McFadden was an undisclosed witness who should have been barred from testifying, and (3) the evidence found in the Pontiac G6 was inadmissible due to lack of foundation for the chain of custody when the vehicle was towed by a private person. Defendant did not argue the trial court erred by (1) allowing improper evidence of a racist statement made by defendant, (2) giving an erroneous attempt (first degree murder) jury instruction, (3) allowing improper closing arguments by the State, or (4) violating defendant's right to a public trial.

¶ 27        The trial court denied the motion for a new trial and, after merging the murder counts, sentenced defendant to natural life imprisonment for each murder conviction and a consecutive sentence of 45 years' incarceration for attempt (first degree murder).

¶ 28        This appeal followed.

¶ 29                              II. ANALYSIS

¶ 30        On appeal, defendant contends he was deprived of a fair trial due to cumulative error based on the following: (1) discovery violations, (2) the lack of foundation for evidence found in defendant's vehicle, (3) the admission of improper evidence of a racist statement made by defendant, (4) the giving of an erroneous attempt (first degree murder) jury instruction, (5) improper closing arguments by the State, and (6) a violation of defendant's right to a public trial.

¶ 31        "The cumulative effect of multiple errors may deny a defendant a fair trial." *People v. Brown*, 2023 IL App (4th) 220476, ¶ 38 (citing *People v. Mays*, 2023 IL App (4th) 210612, ¶ 114. "Where errors, when individually considered, are not sufficiently egregious to grant a new trial, but the errors nevertheless create a pervasive pattern of unfair prejudice to the defendant, a new trial may be granted on the ground of cumulative error." *Brown*, 2023 IL App (4th) 220476, ¶ 38; see *Mays*, 2023 IL App (4th) 210612, ¶ 114. It must be remembered, however, that no trial is perfect, and a defendant in a criminal case is entitled to a fair trial, not a perfect one. *People v. Bull*, 185 Ill. 2d 179, 214, 705 N.E.2d 824, 841 (1998). "Where none of the alleged errors amount to reversible error on any individual issue, there generally is no cumulative error." *Brown*, 2023 IL App (4th) 220476, ¶ 38; *Mays*, 2023 IL App (4th) 210612, ¶ 114.

¶ 32                              A. Forfeiture

¶ 33    We first observe defendant forfeited all but two of the issues he asserts were error. Except for arguments concerning discovery violations and the foundation for evidence found in defendant's vehicle, defendant did not object to the remaining alleged errors at trial and raise the issues in his motion for a new trial. "[T]he presence of both a trial objection and a written post-trial motion raising the issue are necessary to preserve an issue for review." *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Failure to properly preserve an issue results in forfeiture on appeal. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1129.

¶ 34    Additionally, defendant does not argue we should apply a plain-error analysis to consider any individual forfeited issue. While a reviewing court may consider an unpreserved claim of error for plain error, "[t]he burden is on a defendant to establish plain error; if a defendant does not argue for a plain-error analysis, then the defendant forfeits any plain-error contention." *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 57, 103 N.E.3d 1059; see *People v. Hillier*, 237 Ill. 2d 539, 550, 931 N.E.2d 1184, 1190 (2010) (appellate court erred in reaching merits of issues where defendant forfeited issues and did not argue plain error).

¶ 35    While defendant does not argue plain error applies to any single error, he does argue the cumulative-error analysis as a whole does not depend on each individual error being harmless or amounting to plain error. However, defendant has cited no authority to support the contention that, by combining multiple unpreserved, forfeited errors, a defendant may, via a cumulative-error argument, transform his claim into one that is preserved. Indeed, we recently rejected such an argument in *Brown*. There, this court rejected the defendant's claims of error based on forfeiture and therefore also rejected the defendant's cumulative-error argument. In doing so, this court also cited with approval a holding of the Third District, stating: " 'We are aware of no authority *** to support the contention that, by combining multiple unpreserved,

- 10 -

forfeited errors, a defendant may transform his claim into one that is preserved or not forfeited.' " *Brown*, 2023 IL App (4th) 220476, ¶ 39 (quoting *People v. Darr*, 2018 IL App (3d) 150562, ¶ 46, 95 N.E.3d 10). Accordingly, we address only those errors that were not forfeited.

¶ 36                                    B. Discovery Violations

¶ 37          Defendant argues the trial court erred by allowing testimony from McFadden when he was not disclosed as witness before trial and by allowing experts to testify when their CVs had not been provided before trial.

¶ 38          Discovery in criminal cases is governed, in part, by Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001). Rule 412(a)(i), (iv) provides, in part, upon request of defense counsel, the State shall disclose to the defense information including (1) the names and addresses of individuals the State intends to call as witnesses and (2) reports or statements of experts, including "a statement of qualifications of the expert." Ill. S. Ct. R. 412(a)(i), (iv) (eff. Mar. 1, 2001). " 'The purpose of the discovery provision is to afford the accused protection against surprise, unfairness and inadequate preparation.' " *Brown*, 2023 IL App (4th) 220476, ¶ 26 (quoting *People v. Robinson*, 157 Ill. 2d 68, 79, 623 N.E.2d 352, 358 (1993)).

¶ 39          "Although compliance with the discovery requirements is mandatory, noncompliance requires a reversal only upon a showing of surprise or undue prejudice." *Brown*, 2023 IL App (4th) 220476, ¶ 27. The defendant bears the burden to show surprise. *Brown*, 2023 IL App (4th) 220476, ¶ 27. Further, "the exclusion of evidence is a last resort that is required only where a continuance would be ineffective." *Brown*, 2023 IL App (4th) 220476, ¶ 27. "A continuance for the purpose of pursuing an investigation addresses the issue of a late disclosure in a less drastic way than the total exclusion of the evidence, as a continuance may allow the defendant sufficient time to investigate the newly disclosed evidence." *Brown*, 2023 IL App

(4th) 220476, ¶ 27.  Thus, "[e]ven if the time granted in a continuance would not be sufficient for defendant's counsel to investigate the new evidence fully, requesting a continuance establishes that a substantial amount of time is both needed and seen as important by the defendant." *Brown*, 2023 IL App (4th) 220476, ¶ 27.  Accordingly, the failure to request a continuance is relevant to the determination of whether new evidence actually surprised or unduly prejudiced the defendant.  *Brown*, 2023 IL App (4th) 220476, ¶ 27.

¶ 40      Normally, when a defendant elects to forgo more moderate measures to deal with the purported discovery violation and proceeds with trial, the claimed error, if any, is forfeited. *Brown*, 2023 IL App (4th) 220476, ¶ 27.  "A defendant may not request only the most drastic measures to remediate a discovery violation, then argue on appeal that he is entitled to a new trial when those drastic requests were not granted."  *Brown*, 2023 IL App (4th) 220476, ¶ 27.  Where the facts giving rise to the alleged discovery violation are not in dispute, the issue becomes one of law, which we review *de novo*.  *People v. Hood*, 213 Ill. 2d 244, 256, 821 N.E.2d 258, 265 (2004).

¶ 41      Here, defendant never requested a continuance in connection with any of the undisclosed evidence, nor did he show actual surprise or prejudice.  He also declined to take the time to examine the CVs when the trial court offered it.  However, as to the experts, defendant did state he wished to ensure his objection was preserved.  Given defendant's insistence at trial on preserving the issue despite not seeking a continuance, we do not find the issue forfeited by his failure to do so.  However, defendant's decision to forgo the opportunity for disclosure before cross-examination is nevertheless relevant to the determination of whether the court erred in allowing the testimony.  In that regard, we note defendant did not explain how the lack of disclosure of the CVs before trial caused prejudice.  Instead, defense counsel told the court he

- 12 -

was not going to cause a delay "for unnecessary inquiry" into the experts' qualifications. Defendant then did not question the experts about their qualifications at all during trial. Further, nothing indicates the experts' qualifications changed anything about defendant's trial strategy. Thus, the record shows there was no actual prejudice to defendant. Accordingly, defendant's argument the experts' testimony should have been excluded is without merit.

¶ 42     As to McFadden, the State explained its reason for adding him as a late witness was to show the chain of custody of defendant's vehicle based on testimony elicited by the defense during cross-examination of witnesses showing that officers did not follow the tow truck to the police station. Defendant referenced his previous objection but made no meaningful argument regarding surprise or prejudice. Defendant further did not seek a continuance to investigate McFadden's testimony. Defendant then asked very few questions of McFadden, and nothing in the record indicates defendant was unable to effectively cross-examine him. Thus, as with the expert witness testimony, we find defendant's argument McFadden's testimony should have been excluded is without merit.

¶ 43                 C. Foundation for Evidence Found in Defendant's Vehicle

¶ 44     Defendant contends the State failed to provide sufficient foundation for the evidence found in his vehicle. In particular, he argues the State failed to show the evidence was in the vehicle at the time of the arrest or that protective measures were taken to prevent tampering with the evidence before the vehicle arrived at the police department.

¶ 45     The State establishes a *prima facie* case of a sufficient chain of custody when it establishes the police employed reasonable protective measures to ensure the evidence had not been tampered with, substituted, or altered between seizure of the evidence and forensic testing. *People v. Woods*, 214 Ill. 2d 455, 468, 828 N.E.2d 247, 255 (2005). "Unless the defendant

produces evidence of actual tampering, substitution or contamination, a sufficiently complete chain of custody does not require that every person in the chain testify, nor must the State exclude every possibility of tampering or contamination." *Woods*, 214 Ill. 2d at 467, 828 N.E.2d at 255. However, the State must establish "reasonable measures were employed to protect the evidence from the time that it was seized and that it was unlikely that the evidence has been altered." *Woods*, 214 Ill. 2d at 467, 828 N.E.2d at 255. If a defendant is unable to show evidence of actual tampering, alteration, or substitution, deficiencies in a chain of custody will go to the weight of the evidence and not its admissibility. *Woods*, 214 Ill. 2d at 467, 828 N.E.2d at 255. We review a trial court's ruling on the sufficiency of a chain of custody for an abuse of discretion. *People v. Howard*, 387 Ill. App. 3d 997, 1004, 902 N.E.2d 720, 727 (2009).

¶ 46          Here, the witnesses testified defendant's vehicle was found at the scene. McFadden towed the vehicle to the police department at the direction of a police officer and made no stops along the way. Nothing in the record suggests the evidence was altered or tampered with. Given defendant did not provide any evidence of actual tampering, alteration, or substitution, any deficiencies in the chain of custody went to the weight of the evidence and not its admissibility. Thus, the trial court did not abuse its discretion in admitting the evidence.

¶ 47          In sum, we find no error. Where, as here, no error occurred at all, or defendant failed to argue that any error that may have occurred was plain error, defendant is not entitled to a new trial based on cumulative error. See *People v. Caffey*, 205 Ill. 2d 52, 118, 792 N.E.2d 1163, 1204 (2001). Accordingly, because the errors alleged by defendant do not amount to any reversible error on any individual issue, his cumulative-error argument lacks merit. *People v. Doyle*, 328 Ill. App. 3d 1, 15, 765 N.E.2d 85, 98 (2002).

¶ 48                                    III. CONCLUSION

¶ 49   For the reasons stated, we affirm the trial court's judgment.

¶ 50   Affirmed.